MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

HOGAN LOVELLS US LLP
TOM BOER (SBN 199563)
*tom.boer@hoganlovells.com*
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

Attorneys for Defendant
3M Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CITY OF CORONA and CORONA UTILITY AUTHORITY,<br><br>Plaintiffs,<br><br>vs.<br><br>3M COMPANY, E.I. DU PONT DE NEMOURS & COMPANY, THE CHEMOURS COMPANY, CORTEVA, INC., DUPONT DE NEMOURS, INC., DECRA ROOFING SYSTEMS, INC., and DOE DEFENDANTS 1-49, inclusive,<br><br>Defendants. | Case No. 5:21-cv-1156<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

Defendant The 3M Company ("3M"), by undersigned counsel, hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, from the Superior Court of the State of California for the County of Riverside, to the United States District Court for the Central District of California, Eastern Division. 3M is entitled to remove this action based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). As further grounds for removal, 3M states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs seek to hold 3M and other Defendants liable for their alleged conduct in designing, manufacturing, and selling per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and/or releasing PFAS including PFOA and PFOS from manufacturing facilities in Corona, California, which purportedly impacted local groundwater and surface waters and thereby contaminated Plaintiffs' water supplies. *See, e.g.*, Ex. 1, First Amended Complaint ("FAC") ¶¶ 2-7.

2. Plaintiffs' counsel in this case are also counsel for the plaintiffs in a similar case pending in the Central District of California, *Orange County Water Dist., et al. v. 3M Co., et al.*, No. 8:21-cv-01029 (C.D. Cal.) ("*OCWD*"), in which many of the allegations are virtually identical to those in this case. The complaints in both cases include allegations that Plaintiffs' counsel in *OCWD* recently described to the Court there as encompassing claims to recover for alleged contamination from the use, storage, or disposal of PFAS-containing aqueous film-forming foams ("AFFF"), a fire-extinguishing agent that was developed for sale to the United States military in accordance with rigorous military specifications ("MilSpec AFFF"). *See* Ex. 2, Ex Parte Application To Remand, *Orange County Water Dist., et al. v. 3M Co., et al.*, No. 8:21-cv-01029 (C.D. Cal.), Dkt. 14, at Memorandum ("Mem.") 9-11; Ex. 3, Complaint, *Orange County Water Dist. et al. v. 3M Co., et al.*, No. 30-2020-01172419-CU-PL-CXC (Cal. Super Ct. Cty. of Orange filed Dec. 1, 2020) ("*OCWD*"). Because Plaintiffs' counsel have stated that allegations like those in the

Complaint here are intended to include MilSpec AFFF claims, 3M intends to assert the federal government contractor defense in this case to the extent that Plaintiffs' claims arise from MilSpec AFFF.

3. Given Plaintiffs' apparent intent to seek recovery for MilSpec AFFF claims, 3M is entitled to remove this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), to have its federal defense adjudicated in a federal forum. Courts have repeatedly held that AFFF manufacturers properly removed cases to federal court when the plaintiffs' claims plausibly arose at least in part from MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* ("*In re AFFF*"), No. 2:18-mn-2873, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019); *Ayo v. 3M Comp.*, No. 18-cv-0373, 2018 WL 4781145, at *6-15 (E.D.N.Y. Sept. 30, 2018). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## PLAINTIFFS' FIRST AMENDED COMPLAINT

4. This action was filed on December 1, 2020, in the Superior Court of the State of California for the County of Riverside, bearing Case No. CVR12100800, and 3M was served with the initial complaint on February 16, 2021. (Ex. 4, State-Court Record 229-299, 303-04 (Initial Complaint and Summons).) The operative First Amended Complaint was filed on June 10, 2021. (Ex. 1, FAC.)

5. The First Amended Complaint pleads that Plaintiff City of Corona ("City") "owns, operates, and controls" both a "water enterprise" and a "wastewater enterprise" that provide drinking water and wastewater treatment services to customers in and around Corona, California. (*Id*. ¶ 1.) The City leases the water and wastewater enterprises to Plaintiff Corona Utility Authority, "a joint powers

authority," which has "contracted with the City to appoint and retain the City as the manager and operator" of the water and wastewater enterprises. (*Id.*)

6. Plaintiffs allege that they have brought this action to recover costs and obtain other relief relating to "contamination of drinking water, surface water, and groundwater with PFAS," which purportedly pose risks to human health. (*Id.* ¶¶ 2-3.) Specifically, Plaintiffs "seek abatement of an ongoing nuisance, to recover compensatory and all other damages and relief, including all necessary funds to compensate Plaintiffs for the costs of investigating and remediating the contamination of surface water and groundwater impacted by PFOA, PFOS, and PFBS [perfluorobutanesulfonic acid] . . . , designing, constructing, installing, operating, and maintaining the treatment facilities and equipment required to remove PFOA, PFOS, and PFBS . . . from public water supplies, and for such other damages and relief the Court may order." (*Id.* ¶ 7.)

7. Plaintiffs allege that 3M manufactured, marketed, and sold PFAS chemicals (including PFOS and PFOA) as well as products containing them in the State of California, resulting in contamination of the environment, including the groundwater that serves as a water source for Plaintiffs and their customers. (*See id.* ¶¶ 4, 78-83, 271.) According to the First Amended Complaint, PFAS may enter the environment when products containing PFAS are used and/or have been disposed. (*Id.* ¶ 62.) Plaintiffs additionally allege that 3M owns and operates the "3M Corona Facility" in Temescal Canyon; that 3M uses PFAS in the manufacture of roofing products at the facility; that 3M also has sold PFAS chemicals to Defendant DECRA Roofing Systems, Inc., for use in manufacturing roofing products at an adjacent facility; and that PFAS releases from the two facilities have contaminated Plaintiffs' water supplies with PFOA and PFOS. (*See id.* ¶¶ 260-69*; see also id.* ¶ 59.)

8. Plaintiffs assert claims against 3M and other Defendants for Strict Products Liability Based on Design Defect (*id.* ¶¶ 270-92), Strict Products Liability Based on Failure to Warn (*id.* ¶¶ 293-315), Continuing Trespass (*id.* ¶¶ 316-38),

Public and Private Nuisance (*id.* ¶¶ 339-71), Negligence (*id.* ¶¶ 372-87), and declaratory relief (*id.* ¶¶ 388-95).[1]

## THE PROCDEURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446 ARE MET

9. Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a) because the Superior Court of the State of California for the County of Riverside is located within the Central District of California, Eastern Division.

10. 3M is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

11. Pursuant to 28 U.S.C. § 1446(a), copies of "all process, pleadings, and orders served upon [3M]" in this action as of this date are being submitted to the Court along with the Notice of Removal as Exhibit 4.

12. This Notice of Removal is timely filed under 28 U.S.C. § 1446. The "case stated by the initial pleading [wa]s not removable" (28 U.S.C. § 1446(b)(3)) because the allegations in the Initial Complaint were "indeterminate" with respect to whether they included any claims arising from contamination caused by MilSpec AFFF (*Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124-25 (9th Cir. 2013))—indeed, it is indisputable that there is no reference to AFFF, let alone MilSpec AFFF, in either the Initial Complaint or the First Amended Complaint. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694-95 (9th Cir. 2005) ("notice of removability under § 1446(b) is determined through examination of the four corners

---

[1] Plaintiffs also assert fraudulent transfer claims under California and Delaware law against Defendants E.I. Dupont de Nemours and Company, The Chemours Company, Corteva, Inc., and DuPont De Nemours, Inc. (Ex. 1, FAC ¶¶ 396-441.)

of the applicable pleadings," in which "the ground for removal must be revealed affirmatively" in order for the 30-day removal clock to be triggered); *accord Durham*, 445 F.3d at 1250. Further, this Notice of Removal is being filed "within 30 days after receipt" by 3M of the June 16, 2021 Ex Parte Application To Remand filed by Plaintiffs' counsel in the *OCWD* litigation, in which (as discussed at ¶¶ 22-27, *infra*) Plaintiffs' counsel stated that allegations virtually identical to those pleaded in this case are intended to encompass claims relating to MilSpec AFFF.[2]

13. Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case, and 3M is filing a copy with the Clerk of the Superior Court of the State of California for the County of Riverside.

14. By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

15. 3M reserves the right to amend or supplement this Notice of Removal. If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

16. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted

---

[2] 3M does not concede that its receipt of the Ex Parte Application to Remand in the *OCWD* case actually triggered the 30-day removal clock in *this* case. But because Plaintiffs would likely argue that it did, and would likely challenge on that basis the timeliness of any notice of removal that 3M might file more than 30 days after its receipt of the ex parte filing in the *OCWD* case, 3M is removing this case now even though it is not required to do so at this time.

under federal authority, and those actions have a causal nexus with the plaintiff's claims; and (c) it can assert a "colorable" federal defense. *Durham*, 445 F.3d at 1251; *accord Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017).

17. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 "protect[s] federal officers" and "guarantee[s] its agents access to a federal forum if they are sued or prosecuted." *Durham*, 445 F.3d at 1253. This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, the statute must be "liberally construed" in favor of removal. *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

18. All requirements for removal under § 1442(a)(1) are satisfied here, where Plaintiffs' counsel have now stated that they intend the allegations of the operative complaint to encompass claims to recover for injuries that were caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case against AFFF manufacturers, and noting that "[t]he specific factual questions of whether the challenged act was within the scope of the federal contract are for federal—not state—courts to answer."); *Ayo*, 2018 WL 4781145, at *6-15 (denying motion to remand and finding that federal officer removal was proper in case against AFFF manufacturers). The court overseeing the *In re AFFF* MDL has also found on multiple occasions that removal under § 1442(a)(1) is proper where plaintiffs' claimed injuries allegedly were caused, at least in part, by MilSpec AFFF. *See In re AFFF*, 2019 WL 2807266, at *2-3 (federal officer removal statute "entitl[ed] [AFFF manufacturers] to have removed New York's tort claims

and [their] federal defense to federal court"); Order 3-5, *In re AFFF*, No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019); Order 3-6, *In re AFFF*, No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019). Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly show that removal to federal court is proper in this case.

### A. MilSpec AFFF

19. Since the late 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

20. The manufacture and sale of AFFF procured by the military is governed by MilSpecs created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, a "manufacturer's . . . products are examined, tested, and

---

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), http://bit.ly/2mujJds.

[5] *See* Mil-F-24385 (1969). The November 1969 MilSpec and all its revisions and amendments through April 2020 (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[8] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[9] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[10]

21. From its inception until very recently, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—the very compounds at issue in the Complaint here.[11] The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12] Indeed, the current MilSpec recognizes that

---

[7] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* Dep't of Defense SD-6, *supra* note 7, at 3.)

[9] Dep't of Defense SD-6, *supra* note 7, at 1.

[10] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[12] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

### B. Plaintiffs' Counsel Have Now Stated That Virtually Identical Allegations in *OCWD* Are Intended To Include Claims For Alleged Contamination Caused At Least In Part By MilSpec AFFF

22. Although neither the Initial Complaint nor the First Amended Complaint expressly indicated that any of Plaintiffs' claimed damages in this action resulted from MilSpec AFFF, Plaintiffs' counsel have now stated in the context of the *OCWD* case that the virtually identical allegations there are intended to include and encompass claims for contamination from MilSpec AFFF.

23. Plaintiffs' counsel (SL Environmental Law Group, PC, Robinson Calcagnie, Inc., and Kelly Drye & Warren LLP) also represent eleven water-authority plaintiffs suing 3M in *Orange County Water District v. 3M Company*, another action pending in this District that (like this action) is based on allegations concerning 3M's purported liability for contamination of the plaintiffs' water supplies with PFAS chemicals. *See, e.g.*, Ex. 3, *OCWD* Complaint, p. 1 & ¶¶ 1-13.

24. On June 11, 2021, 3M removed the *OCWD* action to the U.S. District Court for the Central District of California. On June 16, 2021, Plaintiffs' counsel filed an Ex Parte Application To Remand in the *OCWD* action. Their Ex Parte Application repeatedly stated that they intended their allegations that 3M is "'responsible for PFOA, PFOS, and/or products that contain PFOA and/or PFOS, resulting in contamination of . . . the groundwater within OCWD's territorial jurisdiction'" to "encompass" *MilSpec AFFF* claims. Ex. 2, Ex Parte Application at Mem. 9 (quoting Ex. 3, *OCWD* Complaint ¶ 275); *accord id.* ("On their face, these allegations encompass PFOA and PFOS contamination resulting from the use of *any* of 3M's products containing PFOA or PFOS . . . , including MilSpec AFFF.") (emphasis in original); *id.* at 10 ("Simply by applying a reasonable amount of

---

[13] *Id.* § 6.6.

intelligence in reviewing Plaintiffs' . . . complaints . . . 3M was able to ascertain the connection between Plaintiffs' alleged PFAS contamination from *any and all of 3M's PFAS-containing products* and the particular category of those products, MilSpec AFFF, which is the subject of hundreds of other groundwater contamination lawsuits against it.") (emphasis in original); *id.* at 11 (asserting that "Plaintiffs' claims for contamination from '*PFOA, PFOS, and/or products that contain PFOA and/or PFOS*,' on their face, included claims for contamination from MilSpec AFFF") (emphasis in original).[14] While the *OCWD* plaintiffs' argument that 3M should have removed that case sooner is ultimately unfounded (*see* n.2 *supra*), Plaintiffs' counsel cannot in good faith contend now that this case does not meet the requirements for removal given how they have asked the Court to interpret allegations that are identical to those in this matter.

25. Both the First Amended Complaint and the Initial Complaint in this action allege, *in exactly the same terms* used in *Orange County Water District*, that 3M is "responsible for PFOA, PFOS, . . . and/or products that contain PFOA and/or PFOS . . . , resulting in contamination of . . . the groundwater" from which Plaintiffs derive their water supplies. Ex. 1, FAC ¶ 271; Ex. 4, Initial Complaint ¶ 266; *compare with* Ex. 3, *OCWD* Complaint ¶ 275 (3M is "responsible for PFOA, PFOS, and/or products that contain PFOA and/or PFOS, resulting in contamination of . . . the groundwater" and thereby purportedly contaminating the plaintiffs' water supplies) (quoted in Ex. 2, Ex Parte Application at Mem. 9).

26. Because the same Plaintiffs' counsel included the same allegations in the complaints in *OCWD* and this case that they have stated are intended "[o]n their face" to "encompass" and "include[] claims for contamination from MilSpec AFFF" (Ex. 2, Ex Parte Application at Mem. 9 & 11), here too, Plaintiffs' allegations

---

[14] After the district court denied Plaintiffs' Ex Parte Application for failure to establish a basis for emergency relief, Plaintiffs made the exact same statements, again, in their recently filed Motion To Remand. *See* Motion To Remand at Mem. 8-11, *Orange Cty. Water Dist. v. 3M Co.*, No. 8:21-cv-01029 (C.D. Cal.), Dkt. 39.

likewise presumably are intended "[o]n their face" to "encompass" and "include[]" claims for contamination from MilSpec AFFF."

27. As a result, removal of this action to federal court is proper based on federal officer jurisdiction because, as discussed below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged contamination caused at least in part by MilSpec AFFF.

**C. All The Requirements Of 28 U.S.C. § 1442(a)(1) Are Satisfied**

**1. The "Person" Requirement Is Satisfied**

28. The first requirement for removal under the federal officer removal statute is satisfied because 3M (a corporation) is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1). The Ninth Circuit has recognized that a non-natural entity is a "person" for purposes of § 1442(a)(1). *See Goncalves*, 865 F.3d at 1244; *accord Lombardi v. TriWest Healthcare All. Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *2 (D. Ariz. May 4, 2009).

**2. The "Causal Nexus" Requirement Is Satisfied**

29. The second requirement is that the defendant has acted under a federal officer, and that those actions have a causal nexus with the plaintiff's claims. *Durham*, 445 F.3d at 1251.

30. A defendant is "acting under" a federal officer when it assists or helps carry out the duties or tasks of a federal officer. *Goncalves*, 865 F.3d at 1245. The words "acting under" are to be interpreted broadly. *Id.* Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

31. 3M was "acting under" a federal officer here because, in providing MilSpec AFFF, 3M was furnishing a vital product "that, in the absence of Defendants,

the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members). The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[15] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (holding that Defendants were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (finding "acting under" requirement was satisfied because AFFF manufacturer defendant "has demonstrated that it was manufacturing the product under the U.S. military's guidance"). If 3M and other manufacturers did not manufacture and supply MilSpec AFFF, the government would have to manufacture and supply the product itself.

32.   In designing, manufacturing, and supplying the MilSpec AFFF products at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[16] Further, the AFFF products in question were subject to various tests by the United States Navy before and after

---

[15] *Fulfilling the Roosevelts' Vision* at 37.

[16] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[17]

33. The requirement that a defendant's actions were taken "under color of federal office … has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, the "hurdle erected by this requirement is quite low." *Goncalves*, 865 F.3d at 1245 (quoting *Isaacson*, 517 F.3d at 137).[18] Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137.

34. To show a causal nexus with the plaintiff's claims, a defendant need only establish that the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Isaacson*, 517 F.3d at 137-38; *see also Papp*, 842 F.3d at 813 (explaining that in order to meet the causation requirement, it is "sufficient for there to be a connection or association between the act in question and the federal office").

35. Here, it is now apparent that Plaintiffs' claims against 3M arise at least in part from alleged contamination of their water supply with PFAS from MilSpec AFFF. 3M contends that the use of such chemicals was required by military specifications. The conflict is apparent: MilSpec AFFF was developed for use by the military, and was designed to meet specifications established by the Department of Defense. The liability that Plaintiffs are attempting to impose via state tort law due to the design choices related to the production of MilSpec AFFF would create a conflict in which 3M could not "comply with both its contractual obligations and the state-prescribed duty of care." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 509 (1988);

---

[17] *See* Dep't of Defense SD-6, *supra* note 7, at 1.

[18] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

*see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *accord In re AFFF*, 2019 WL 2807266, at *3 ("Here, [plaintiff's] claims arise out of use of AFFF products that it claims [the defendant] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here.").

36. Because Plaintiffs' allegations were (according to Plaintiffs' own counsel) intended to encompass and include claims for injuries that arose at least in part from MilSpec AFFF (*see supra*, ¶¶ 22-27), there is a causal connection between those claimed injuries and 3M's actions under color of federal office.

### 3. The "Colorable Federal Defense" Requirement Is Satisfied

37. The third requirement—that the defendant have a "colorable federal defense"—is satisfied by 3M's assertion of the government contractor defense. The Ninth Circuit has recognized that this defense supports removal under § 1442(a)(1). *See Leite*, 749 F.3d at 1124.

38. At the removal stage, a defendant need only show that its government contractor defense is "colorable." *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) (quoting *Jefferson Cty.*, 527 U.S. at 407). "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[19] Moreover, "this inquiry is undertaken whilst

---

[19] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only

- 14 -

viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (citation omitted).

39. Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

40. 3M has alleged facts that satisfy these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[20] Indeed, 3M's products appeared on the DOD Qualified Products Listing,[21] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.[22] *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in

---

determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

[20] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[21] MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014), http://www.dcfpnavymil.org/Systems/AFFF/QPL%2024385%20HISTORY%20-%20TYPE%203.pdf; MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014), http://www.dcfpnavymil.org/Systems/AFFF/QPL%2024385%20HISTORY%20-%20TYPE%206.pdf.

[22] *See* Dep't of Defense SD-6, *supra* note 7, at 1.

their products."); *see also id.* ("There is also colorable evidence … that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

41. Moreover, the U.S. government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.[23] Indeed, it is clear that the United States has long understood that AFFF may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and that it has been reported that this may raise environmental or health issues.[24]

42. In fact, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[25] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for

---

[23] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (Rev. May 2, 1977).

[24] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1-6 (Nov. 4, 2002) (excerpt).

[25] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

"groundwater contamination."[26] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA in drinking water. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[27] Until just earlier this year, Naval Sea Systems Command continued to expressly require that MilSpec AFFF contain "fluorocarbon surfactants,"[28] and even today the MilSpec contemplates the presence of "PFOS" and "PFOA" in AFFF formulations.[29] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *In re AFFF*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military were not already aware, [it] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA's] stated concerns with PFOS/PFOA in drinking water . . . .").

43. At a minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *5 (S.D.N.Y. 2011)

---

[26] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[27] Dep't of Defense, Aqueous Film Forming Foam Report to Congress, at 1-2 (Oct. 2017) (pub. Nov. 3, 2017).

[28] *See* MIL-PRF-24385F(2) § 3.2 (2017).

[29] MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

- 17 -
NOTICE OF REMOVAL; CASE NO. 5:21-cv-1156

("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 89-90.

44. 3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

45. Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

\* \* \* \* \*

WHEREFORE, 3M hereby removes this action from the Superior Court of the State of California for the County of Riverside, to the United States District Court for the Central District of California, Eastern Division.

Dated: July 12, 2021

MAYER BROWN LLP
John Nadolenco
Daniel D. Queen

HOGAN LOVELLS US LLP
J. Tom Boer

By: */s/ Daniel D. Queen*
     Daniel D. Queen

Attorneys for Defendant
3M Company